Gilbert Dale STORY, Individually and in his capacity as Chairman of the Student Mobilization Committee, Plaintiff,

v.

Willis M. TATE, Individually and in his capacity as President of Southern Methodist University, Defendant.

Civ. A. No. CA 3-4719-C.

United States District Court,
N. D. Texas,
Dallas Division.
April 29, 1971.

James M. Simons and Cameron M. Cunningham, Austin, Tex., for plaintiff.

John H. McElhaney, Turner, Rodgers, Winn, Scurlock & Sailers, Robert F. Ritchie, Ritchie, Ritchie & Crosland, Dallas, Tex., for defendant.

## MEMORANDUM ORDER DENYING TEMPORARY INJUNCTION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff has asked this Court to temporarily enjoin the defendant from refusing to allow a scheduled program of speakers to appear on the campus of Southern Methodist University on April 30, 1971 between the hours of 12:00 Noon and 2:00 P.M. The relief sought is denied and the cause dismissed.

Plaintiff, Gilbert Dale Story, a student who is also chairman of the Student Mobilization Committee, invited Mr. Arthur Kinoy, Mr. Jerry Rubin, Mr. Bartee Haile, and Mr. Steve Jiminez to appear as guests of the SMC on the SMU campus on April 30, 1971 between Noon and 2:00 o'clock P.M. On April 29 and 30, 1971, the University has planned ceremonies for the dedication of the new Law Library. A portion of these ceremonies will include a speech by the Attorney General of the United States on

April 30, 1971, at 3:00 o'clock P.M. in the Law School Quadrangle.

On April 21, 1971, the plaintiff was denied permission to use the main quadrangle for his speakers' program. The next day plaintiff sought and received permission to use a portion of the Student Center from the Student Center Committee. On the following morning he was given a written statement from Dr. Joe Howell, Vice President for Student Affairs, denying him the use of the Student Center for his program. It stated that the decision was made upon the advice of various university bodies not to allow any events which would conflict with or detract from the Law School Library Dedication scheduled for those two days. The letter did say that the speakers or any others could be scheduled prior to Thursday, April 29, 1971, or after 6:00 o'clock P.M., Friday, April 30, 1971.

Four days later, on April 27, 1971, plaintiff filed suit in this court requesting a temporary restraining order and also a preliminary injunction. The next day, April 28, 1971, a hearing was held with the attorneys. The motion for a temporary restraining order was denied. A hearing on the preliminary injunction was held the next day, April 29, 1971.

■ As a result of that hearing the court now finds that plaintiff has failed to show the state action necessary to give this court jurisdiction under 42 U.S.C. § 1983. Southern Methodist University is a private institution. The only evidence plaintiff offered to show any state involvement in that university was argument to the effect that it performs a public function and, therefore, it is necessarily subject to the First and Fourteenth Amendment sanctions to the same extent as is the state. The court has found no case that has, without more, subscribed to this principle. No other state involvement, other than the fact that it may be necessary to utilize the police to enforce the school rule, was alleged. The state action requirement has

not been met. Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969) and Grossner v. Trustees of Columbia Univ., 287 F. Supp. 535 (S.D.N.Y.1968).

Plaintiff strongly relies upon the company town case of Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1945). This and cases like it are distinguishable. In these types of cases private property was being used by the general public and the function carried out by the owners was that of governing, an activity truly synonymous with that of the state. The private university, on the other hand, does not directly service the general public. Its main function, that of providing an education, is also performed by the state but this does not make it a uniquely governmental role. Historically, education has not been a state function and only within the recent past has government decided to accept this responsibility. The company town and the private university are not the same breed of cat. Also see Grossner v. Trustees of Columbia Univ., supra, 287 F.Supp. at 549, and H. Friendly, The Dartmouth College Case and the Public-Private Penumbra 24 (1969).

It is important to note that although the plaintiff has characterized defendant's action as a "speaker ban", the court does not perceive it to be in such a category as was the case in Brooks v. Auburn University, 296 F.Supp. 188 (M.D.Ala. 1969). There a state-supported university's absolute ban on all speakers who advocated the breaking of laws was found to be vague and overbroad.

■■ Here, there are no bans on the type of speakers or prohibitions on the content of what their speeches might contain. Indeed, the speakers could appear on campus at any other time. This, the timing, according to the plaintiff, goes to the crux of the problem. He contends that he is entitled to the forum created by the visit of the Attorney General. While the time and place in which one speaks is to a large extent an integral part of the freedom of speech guaranteed by the First Amendment, the choice

is not without its limitations. The limitations placed upon the plaintiff here are not unreasonable.

The motion for a preliminary injunction is denied and the cause dismissed.